UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**BRIMSTONE RENTALS, INC.**           **CASE NO. 2:22-CV-02386**

**VERSUS**                            **JUDGE JAMES D. CAIN, JR.**

**KRONOS LOUISIANA, INC.**            **MAGISTRATE JUDGE LEBLANC**

## MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Doc. 18) filed by the Defendant, Kronos Louisiana, Incorporated ("Kronos"). Plaintiff, Brimstone Rentals, Incorporated ("Brimstone") opposes the motion. Doc. 20.

## BACKGROUND INFORMATION

This case involves an alleged breach of a commercial lease. Brimstone and Kronos have a long history. Beginning in 1993, Brimstone began leasing its immovable property to Kronos. Doc. 20-2 at 1. The Brimstone property occupies approximately six acres of land and consists of five buildings with approximately 100,000 square feet of improvements. *Id.* The five buildings were constructed at various times for use by Kronos. *Id.* Kronos leased the property continuously until it vacated the property on December 31, 2021. *Id.*

Beginning no later than 2000, Kronos began using Brimstone's warehouse to repackage titanium dioxide pigments. Doc. 18-2 at ¶¶ 1, 3. Titanium dioxide is a fine, white, nonhazardous powder. *Id.* at ¶ 2. It is used to add whiteness, brightness, and opacity to a variety of industrial and consumer products. Brimstone was aware that the leased

premises was being used for this purpose. *Id.* at ¶ 3. Kronos repackaged 1-ton "super sacks" of titanium dioxide, which were manufactured off-site, into fifty and fifty-five pound bags. *Id.* at ¶ 4.

On May 30, 2002, the parties executed a new lease ("2002 lease") of the property for a five-year term with a monthly rent of $14,900. *Id.* at ¶ 5; Doc. 18-6. As part of the lease, Brimstone agreed to construct a 64' x 300' warehouse. Doc. 20-2 at 2; Doc. 18-6 at 1. That same year, Brimstone constructed an additional 6000 sq. ft. building (the "bagging unit") at Kronos's request for use in the bagging of titanium dioxide. Doc. 20-2 at 2. The 2002 lease contained a provision stating: "Leased premises shall be returned to its original condition at the expense of the Lessee, with exception of normal wear and tear." Doc. 18-2 at ¶ 6. Doc. 18-6 at 4.

Upon expiration of the 2002 lease, the parties executed a new lease at the same rate for a term of five years, beginning on December 1, 2007 ("2007 lease"). Doc. 18-2 at ¶ 7. The 2007 lease contained identical language concerning the return of property in original condition aside from normal wear and tear. Doc. 18-7 at 3. When the 2007 lease expired, the parties executed a new five-year lease at the same rate, beginning on December 1, 2012 ("2012 lease"). Doc. 18-2 at ¶ 9; Doc. 16-1. Again, the 2012 lease contained the same clause regarding normal wear and tear. Doc. 18-2 at ¶ 10; Doc. 16-1 at 4. Five years later the parties executed their last lease agreement, beginning on December 1, 2017 ("2017 lease"). Doc. 18-2 at ¶ 11; Doc. 1-1. Once again, the lease contained the same clause regarding normal wear and tear. Doc. 18-2 at ¶ 12; Doc. 1-1.

In May 2021, Brimstone and Kronos amended the 2017 lease to shorten the term and set an expiration date of December 31, 2021. Doc. 18-2 at ¶ 13; Doc. 18-8. The remainder of the provisions of the 2017 lease remained in full force and effect. Doc. 18-8. On December 31, 2021, Kronos vacated the property at the expiration of the lease. Doc. 20-2 at 2. On February 9, 2022, Brimstone demanded that Kronos clean up the residual titanium dioxide dust that had accumulated on the walls and ceilings of the facility. Doc. 18-9. Kronos failed to undertake any cleanup of the property. Doc. 20-2 at 2. Brimstone hired Pro Waste to clean the property, which required the use of vacuum trucks and disposal at a permitted solid waste facility at an expense of $80,690.94. *Id.* at 3.

Brimstone filed suit against Kronos for breach of the 2017 lease and 2012 lease. Doc. 1-1; Doc. 16. Brimstone alleges that it was unable to reoffer the property for lease until the cleanup was completed on June 10, 2022. Doc. 1-1, Doc. 20-2 at 3. Brimstone alleges that Kronos is in breach for failing to return the premises in its original condition except for normal wear and tear, as required under the terms of the 2017 and 2012 leases and Louisiana Civil Code article 2683. Doc. 1-1 at ¶¶ 10-11; Doc. 16 at ¶ 19. In addition, Brimstone alleges that Kronos's failure to clean-up its waste product breached additional provisions of the 2017 lease that (1) prohibited the dumping or storage of waste and (2) required compliance with laws and ordinances affecting the property. Doc. 16 at ¶¶ 16-18. Brimstone seeks damages for the cost of cleanup, loss of rent, and attorney's fees. Doc. 1-1 at ¶ 15. Kronos denies that it is in breach of the lease. Doc. 8.

Kronos moves for summary judgment arguing that it did not breach the lease because the property in question had been leased for the purpose of repackaging titanium

dioxide and any residual titanium dioxide dust remaining on the walls is consistent with normal wear and tear. Doc. 18-1 at 5. Further, Kronos maintains that even if a breach occurred Brimstone cannot prove its damages because titanium dioxide dust was already on the walls and ceilings when the 2017 and 2012 leases commenced. *Id.* Brimstone opposes the motion. Doc. 20.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to

the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no issue to be tried. Local Rule 56.2 provides that "papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried." LR. 56.2. All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule."[1] *Id.*

## LAW AND ANALYSIS

The parties agree that Louisiana law governs the lease in question. In Louisiana, "the lease contract is the law between the parties in defining their respective rights and obligations." *Tenet HealthSystem Surgical, LLC v. Jefferson Parish Hosp.*, 426 F.3d 738, 741 (5th Cir. 2005). The Louisiana Civil Code serves to fill any gaps in the parties' agreement and "for determining its overall validity and effectiveness." *Schwegmann Fam. Tr. No. 2 v. John Hancock Life Ins. Co.*, 345 F. App'x 13, 15 (5th Cir. 2009) (citing La. Civ. Code art. 2668 cmt. (e)). Article 2683 sets forth a lessee's principal obligations as follows:

---

[1] In this instance, Brimstone filed a Statement of Undisputed Facts setting forth material facts as to which there is no genuine dispute. Doc. 20-1. However, Brimstone failed to controvert or dispute Kronos's Statement of Undisputed Facts as required under Local Rule 56.2. As such, Kronos's statement is deemed admitted for purposes of this summary judgment. *Allen v. C&H Distributors, LLC*, 2015 WL 1399683, at *1 n.1 (W.D. La. Mar. 26, 2015).

"(1) to pay the rent in accordance with the agreed terms; (2) to use the thing as a prudent administrator and in accordance with the purpose for which it was leased; and (3) to return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear[]."  La. Civ. Code art. 2683.

A breach of contract claim has three essential elements: (1) the obligor's undertaking to perform an obligation, (2) the obligor's failure to perform the obligation (the breach), and (3) damages to the obligee resulting from the breach.  *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citation omitted).  "The first two elements of a breach of contract claim, obligation and breach, involve issues of both contractual interpretation as a matter of law, as well as questions of fact regarding whether the actions of the parties actually constituted the alleged breach under the applicable contractual terms."  *Id.* (citation omitted).  The element of damages is a question of fact.  *Id.*

The "[i]nterpretation of a contract is the determination of the common intent of the parties."  La. Civ. Code art. 2045.  "When the words of a contract are clear, explicit, and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."  La. Civ. Code art. 2046.  "A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."  La. Civ. Code art. 2053.  Words used in a contract "must be given their generally prevailing meaning."  La. Civ. Code art. 2047.  "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."  La. Civ. Code art. 2050.

### A. Normal Wear and Tear

The 2017 lease contained the following provision: "Leased premises shall be returned to its original condition at the expense of Lessee, with exception of normal wear and tear." Doc. 1-1 at 8. Kronos argues that it did not breach the lease because any residual titanium dioxide dust left behind when it vacated the premises constitutes "normal wear and tear" based on the purpose for which it was leased. Doc. 18-1 at 9. Brimstone counters that it was the mutual intent of the parties for Kronos to return the leased premises to its original, clean condition, as it was delivered to them.[2] Doc. 20 at 10; Doc. 20-2 at 3.

In support of its position Kronos cites *Terrebonne Parish Sch. Bd. v. Castex Energy, Inc.*, 893 So.2d 789 (La. 2005) to argue that the determination of "wear in tear" in a particular case depends on the purpose for which the property is leased. Doc. 18-1 at 9. The court finds the *Castex* case inapposite to the matter at hand. First, the issue in *Castex* was whether the Louisiana Mineral Code contained an implied duty to restore the surface of the land after the lessee, an oil and gas company, dredged canals created for oil exploration that caused coastal erosion. *Castex*, 893 So.2d at 791. Second, the underlying mineral lease in *Castex* specifically provided the defendant with permission to dredge the

---

[2] As noted above, Brimstone argues that the clear mutual intent of the parties in each lease agreement was that the leased premises would be returned in its original, clean condition, in which it was originally received when the series of leases began. Doc. 20 at 10. Brimstone maintains that the common meaning of wear and tear simply refers to ordinary and normal deterioration. *Id.* at 12. Brimstone contends that Kronos completely failed to return the facility in the good order in which it was originally received when the leasing relationship between the parties began. *Id.* In support, Brimstone cites *Southland Indus. Park v. Matheson Tri-Gas*, 2007 WL 2713412 (La. App. 1 Cir. 9/19/07), a similar fact situation involving multiple leases between the same parties over twenty-five years. The leases in that case contained a provision requiring the lessee to return the leased premises to their original condition at the termination of the lease, which the court interpreted to mean the termination of the tenancy, not merely the most recent lease. *Id.* at *3. Because this matter is before the Court based on the Defendant's motion, it is not necessary to determine the meaning of "original condition" as it is used in the 2012 and 2017 leases at this time.

canals that caused the loss of land, which led the court to reason that the land was "worn and torn" in the manner contemplated by the parties. *Id.* at 800. Kronos contends that because Brimstone allowed it to use the premises for repackaging titanium dioxide, it was aware that its use for that purpose would result in titanium dioxide dust accumulating on the walls and ceilings. Doc. 18-1 at 11. As such Kronos maintains that the premises was left "worn and torn" in a manner contemplated by the parties. *Id.* at 12.

Based on the record presented, the Court cannot find on summary judgment that the state of the premises upon Kronos's departure was normal wear and tear. First, the 2017 lease does not specifically state that the premises would be used for the purposes of re-bagging titanium dioxide. Second, Brimstone has presented the Court with 73 photographs of the inside of its property upon Kronos's departure, which shows white dust covering the entire facility from its floors up to the ceiling and rafters. Docs. 20-3 to 20-76. The photographs suggest that Kronos made no effort to clean the premises upon departure. *Id.* In response, Kronos argues that cleaning expenses are considered normal wear and tear and suggests that the cleaning was mostly unnecessary. Doc. 22 at 3. Brimstone maintains that cleaning was necessary, noting that titanium dioxide would fall from the ceiling, which was exacerbated when a wall was hit, or a door was opened or closed. Doc. 20-2 at 2. Brimstone also contends it could not make necessary repairs to reoffer the property for lease to new tenants until the property was remediated by a professional cleaning company. *Id.* at 3. Based on the information above, issues of material fact exist that prevent the Court from determining on summary judgment that the accumulated dust was merely wear and tear.

### B.     Alleged violation of state and federal regulations

As noted above, Brimstone also alleges that by failing to clean-up the titanium dioxide Kronos breached provisions of the 2017 lease that (1) prohibited the dumping or storage of waste and (2) required compliance with laws and ordinances affecting the property.  Doc. 16 at ¶¶ 16-18.   Brimstone argues that all prior leases, including the 2012 and 2017 leases, contained a provision that Kronos agreed to comply with any regulation or ordinance affecting the property.  Doc. 20 at 13.  The provision in question reads as follows: "Lessee shall comply with all laws and ordinances affecting this property, and nothing shall be placed or done on the property by Lessee which will cause forfeiture of any insurance." Doc. 1-1 at 7.

Brimstone maintains that the titanium dioxide material abandoned at the premises constitutes improper storage of solid waste in violation of the lease and state and federal regulations.  Doc. 20 at 13.  In support, Brimstone has attached the affidavit of its expert, H. DeWayne Corley, a geologist experienced with solid/hazardous waste permitting and disposal.  Doc. 20-78.  Therein, Mr. Corley opines that the abandoned titanium dioxide is considered solid waste under state law that may only be disposed of at a permitted waste facility, and the Brimstone premises did not have such a permit issued by the Louisiana Department of Environmental Quality. *Id.* at 3. For this reason, Brimstone contends that Kronos violated a state law and breached the lease.  Doc. 20 at 13.

Kronos counters that no public authority has found that it violated any law or regulation with respect to the titanium dust left on the walls and ceiling of the warehouse,

which Kronos suggests renders the lease provision inapplicable.  Doc. 22 at 4.  Moreover, Kronos argues that Brimstone has offered no authority to support its position that failure to clean up the warehouse amounted to a regulatory violation, which is a legal conclusion outside of Mr. Corley's purview.  *Id.*

The Court has reviewed the sections of the Louisiana Administrative Code under Title 33, Environmental Quality cited by Mr. Corley.  The regulations state: "all solid waste shall be processed or disposed of at a permitted solid waste facility," with some exceptions not relevant to this case.  La. Admin. Code Tit. 33, pt. VII, § 315(C).  The term "solid waste" is defined in relevant part as: "other discarded material, including solid, liquid, semisolid, or contained gaseous material resulting from industrial, commercial, mining, agricultural operations, [] community activities, and construction/demolition debris."  *Id.* at § 115.  Titanium dioxide dust discarded from the industrial re-bagging process would meet the definition of solid waste.  The term "abandonment" means "to leave behind or desert solid waste at a location without adhering to the proper disposal or processing standards required by these regulations."  *Id.*  Finally, the regulations state that the abandonment of solid waste is considered an act of disposal.  *Id.* at § 315(D).

Whether the titanium dust was abandoned by Kronos, and thus disposed of improperly, is dependent upon whether it is ultimately determined that the dust is consistent with wear and tear.  If attributable to wear and tear the disposal responsibility would rest with Brimstone.  As such, summary judgment on this issue must be denied.

### C. Damages

Kronos argues that even if there were a breach Brimstone will be unable to meet its burden to prove damages. Doc. 18-1 at 12. First, Kronos maintains that Brimstone cannot recover any damages attributable to titanium dioxide dust that accumulated prior to the commencement of the 2012 or 2017 lease because the execution of the new lease terminated the prior lease agreement. *Id.* at 13. Kronos argues that each new lease required the premises to be returned in original condition, except normal wear and tear, which would have been the condition of the premises in 2012 and 2017, respectively. *Id.* Because Brimstone has not provided evidence of the condition prior to the commencement of either lease, Kronos argues that Brimstone is unable to prove that Kronos failed to return the warehouse in its original condition. *Id.* at 13-14.

Second, Kronos argues that Brimstone cannot meet its burden to establish the amount of damages resulting from cleaning only the dust that accumulated after 2012, which is the only amount Brimstone may recover. *Id.* at 14. Kronos maintains that because the warehouse had been used for many years prior to 2012, at least a portion of the dust that was cleaned accumulated prior to years covering the 2012 and 2017 leases. *Id.* at 15. Kronos contends that Brimstone cannot submit the total cost of cleanup but instead must provide evidence that would enable the Court to determine the proportion of the cleanup attributable to the dust accumulated after 2012. *Id.* at 16.

Brimstone counters that Kronos is responsible for the total cost of cleanup based on the language in the 2017 lease that the "premises shall be returned to its original condition at the expense of the Lessee, with the exception of normal wear and tear." Doc. 20 at 14.

Brimstone also argues that it is reasonable under the circumstances of this case for the Court to fix the amount of damages as best as it can. *Id.* at 15.

Even if the Court assumes that Brimstone has not provided any evidence supporting a calculation of damages for cleaning only the titanium dioxide that accumulated after 2012 or 2017, summary judgment is not warranted based on a failure to apportion the damages. Given the nature of the damage involved, titanium dust on the walls and ceilings of the premises, it would be impossible to distinguish which grains of dust settled prior to 2012 or 2017, and which grains of dust settled after. As such, the Court will not grant summary judgment on this basis.

## CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Doc. 18) filed by Kronos Louisiana, Incorporated will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on this 27th day of March, 2024.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**